**Kent Lawrence FEHRIBACH, Jr., Plaintiff,**

v.

**CITY OF TROY, Defendant.**

**No. CIV.04–40279.**

United States District Court, E.D. Michigan, Southern Division.

Oct. 18, 2004.

---

David R. Radtke, Klimist, McKnight, Southfield, MI, Kary L. Moss, American Civil Liberties Union Fund of Michigan, Michael J. Steinberg, American Civil Liberties Union Fund of Michigan, Detroit, MI, for Plaintiff.

Lori G. Bluhm, Troy City Law Department, Troy, MI, for Defendant.

## OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

GADOLA, District Judge.

Before the Court is Plaintiff's motion for a preliminary injunction, filed on October 5, 2004. Because the Court finds that the Plaintiff meets all the requirements for the issuance of a preliminary injunction, the Court will grant the motion.

## I. BACKGROUND

Chapter 85–A of the Troy City Code regulates political signs. Chapter 85–A(3)(b)(1) limits the number of political signs on any parcel of real property to two signs. Chapter 85–A(3)(b)(2) prohibits political signs regarding an election except for thirty days prior to the election and ten days after the election. The Troy City Code also contains a chapter regulating signs generally, Chapter 78. Chapter 85–A is distinguished from Chapter 78 in that it is solely concerned with political signs. If a sign is not political, it is not regulated by Chapter 85–A.

Chapter 78 is supported by the following findings and purpose, abridged here for brevity:

It is hereby determined that proliferation of signs in the City is unduly distracting to motorists and pedestrians, creates a traffic hazard, and reduces the effectiveness of signs needed to direct and warn the public. It is also determined that the appearance of the City is marred by proliferation of signs. It is also determined that the proliferation of signs restricts light and air[,] negatively affects property values[, and] results in an inappropriate use of land. The purpose of this ordinance is to control the occurrence and size of signs in order to reduce the aforementioned negative effects.

Troy City Code, Chapter 78, § 2.01.

On September 3, 2004, the day after George W. Bush was nominated as the Republican Candidate for president, Plaintiff placed a Bush campaign sign in his front yard. The sign was an American flag in the shape of the letter "W". Less than a week later, a City of Troy housing inspector came to Plaintiff's home and inquired into what the sign in the front yard meant. Upon learning that the sign was a political sign, the inspector advised that it had to be taken down until 30 days before the election. The inspector left a memo outlining Troy's political sign ordinance, specifically the time limitation of 30 days prior to the election and the numerical limitation of two signs per house. Plaintiff removed the "W" sign from his yard to comply with the city ordinance.

Desiring to replace the "W" sign in his front yard more than 30 days prior to the

November 2 election, as well as two other signs supporting state and county candidates, Plaintiff filed his "Verified Complaint for Declaratory, Injunctive and Other Relief" on September 27, 2004. The complaint requests that the Court declare sections 3(b)(1) and 3(b)(2) of the Troy political sign ordinance unconstitutional and issue a temporary restraining order ("TRO"), a preliminary injunction, and a permanent injunction enjoining Troy from enforcing sections 3(b)(1) & 3(b)(2). Plaintiff also seeks nominal damages, costs, and attorney's fees.

Contemporaneous with the complaint, Plaintiff filed a motion for a TRO restraining Troy from enforcing the time and numerical limits on political signs. The TRO was granted by Judge George Caram Steeh, acting as presiding judge, after a hearing on September 28, 2004.

Plaintiff then filed his motion for a preliminary injunction on October 5, 2004, which is now before the Court. When Plaintiff filed his motion for a preliminary injunction, the city ordinance limiting the display of political signs to 30 days prior to an election, 85–A(3)(b)(2), was no longer at issue, because the November election was less than 30 days away. The city ordinance, however, which limits the number of political signs to two per parcel, 85–A(3)(b)(1), is still at issue because Plaintiff wishes to place three political signs in his front yard. Therefore, Plaintiff is only seeking a preliminary injunction with respect to the two sign limit, or city ordinance 85–A(3)(b)(1). With respect to the time limit, 85–A(3)(b)(2), the plaintiff wishes to seek declaratory relief, a permanent injunction, and other remedies at a later time.

A hearing was held on Plaintiff's motion for a preliminary injunction on October 8, 2003. At the hearing, the Court took the motion under advisement and extended the provisions of the temporary restraining order for another ten days, to allow for the preparation of this written opinion. *See* Fed.R.Civ.P. 65. For the following reasons, the Court will grant Plaintiff's motion for a preliminary injunction.

## II. ANALYSIS

"When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the temporary restraining order; (3) whether issuance of the temporary restraining order would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the temporary restraining order." *Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 460 (6th Cir.1999)(quoting *Blue Cross & Blue Shield Mutual of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir.1997)); *see also In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985). These four considerations "are factors to be balanced, not prerequisites that must be met." *DeLorean,* 755 F.2d at 1229. A district court must make specific findings concerning each of the four factors unless fewer are dispositive of the issue. *Performance Unlimited v. Questar Publishers, Inc.,* 52 F.3d 1373, 1381 (6th Cir.1995). All four factors favor Plaintiff.

### A. Plaintiff has a strong likelihood of success on the merits

The Court must first examine the strength of Plaintiff's likelihood of success on the merits. "Where a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Detroit Free Press v. Ashcroft,* 303 F.3d

681, 710 (6th Cir.2002). Even if Plaintiff is unable to show that he is likely to succeed on the merits, however, the Court still may enter a preliminary injunction if the other factors are strongly in Plaintiff's favor. *See DeLorean,* 755 F.2d at 1229; *In Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir. 1982); *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–38 (6th Cir. 1978). Here, however, Plaintiff does have a strong likelihood of success on the merits.

At the outset, the Court notes that precedent strongly favors Plaintiff. First Amendment protections involving speech in the home receive special importance because of our culture and law. *See City of Ladue v. Gilleo,* 512 U.S. 43, 54, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). In addition, the Supreme Court accords special "reverence" to yard signs. *See Id.,* and *Cleveland Area Bd. of Realtors v. City of Euclid,* 88 F.3d 382, 390 (6th Cir.1996). Finally, "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Burson v. Freeman,* 504 U.S. 191, 196, 112 S.Ct. 1846, 119 L.Ed.2d 5, (1992)(quoting *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271, (1989)).

In 1996, the Eastern District of Michigan invalidated similar ordinances in the city of Warren, which limited the number of signs to one per candidate and the time period to 45 days before an election. *Dimas v. City of Warren,* 939 F.Supp. 554 (E.D.Mich.1996) (Taylor, J.). The Court held that the ordinances did not meet any of the requirements of a time, place, or manner restriction. The ordinances were content-based; not narrowly tailored to further the "significant" government interests of neighborhood aesthetics, property value, or traffic safety; and did not leave open alternative channels for communication of the message. *Id.* In 1993, the Fourth Circuit struck down an ordinance limiting temporary political signs to two per house as unduly restrictive of First Amendment rights. *Arlington County Republican Committee v. Arlington County Virginia,* 983 F.2d 587 (4th Cir.1993). The *Arlington County* decision was cited with approval by the Sixth Circuit in affirming the striking down of ordinances regulating the size, number, and placement of signs in residential neighborhoods. *Cleveland Area Board of Realtors,* 88 F.3d at 388.

Nevertheless, in order to meet the first factor of a strong likelihood of success on the merits, the Court must find that the Plaintiff has a high probability of proving the city's two-sign ordinance unconstitutional. In other words, there must be a strong likelihood that the Court will find the ordinance to be an invalid time, place, or manner restriction, as well as an invalid content-based speech restriction.

### 1. Whether Troy's ordinance is not a valid time, place, or manner restriction.

A valid time, place, or manner restriction meets three requirements: (1) it must be content-neutral; (2) it must be narrowly tailored to further substantial government interests; and (3) it must leave open ample alternative means for communicating the desired message. *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Troy's two-sign ordinance does not meet the requirements of a valid time, place, or manner restriction.

Regarding the first factor, "content-neutral speech restrictions [are] those that are justified without reference to the content of the regulated speech." *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48, 106

S.Ct. 925, 89 L.Ed.2d 29 (1986) (quotations omitted). The clearest explanation of this principle is found in *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). There, the Supreme Court held the city's ordinance was not content-neutral because it banned newsracks containing commercial handbills but not newsracks containing newspapers. The Court stated that "[under] the city's newsrack policy, whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack. Thus, by any commonsense understanding of the term, the ban in this case is 'content based.' " *Id.* at 428, 113 S.Ct. 1505.

Earlier, the Supreme Court explained that content-neutrality must extend, not only to the particular position of the speaker, but also to the speaker's choice of topic. *Boos v. Barry,* 485 U.S. 312, 319, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). The Court held that "a regulation that does not favor either side of a political controversy is nonetheless impermissible because the First Amendment's hostility to content-based regulation extends ... to prohibition of public discussion of an entire topic." *Id.* (quotations omitted). Thus, in *Burson v. Freeman,* the Supreme Court found Tennessee's election law prohibiting solicitation of votes and display or distribution of campaign materials to be a facially content-based restriction because the statute was solely concerned with political speech. *Burson,* 504 U.S. at 196–98, 112 S.Ct. 1846.

Applying this standard, the Court finds that Plaintiff would likely succeed in proving that the Troy ordinance is content-based because it only applies to political signs. Once Plaintiff has placed two political signs in his front yard, whether he can display a third sign depends on whether the content of the third sign is political. It is no small matter that the housing inspector who first informed Plaintiff that his sign did not comply with city ordinances had to first inquire into the content of the sign. By the "commonsense understanding of the term," the Troy city ordinance is not content neutral. *City of Cincinnati,* 507 U.S. at 428, 113 S.Ct. 1505. That the ordinance is neutral as to a particular political view is not relevant to the determination of whether it is content-neutral. As stated above, the Supreme Court "has held that the First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic." *Burson,* 504 U.S. at 197, 112 S.Ct. 1846. Although the Troy ordinance is viewpoint-neutral, it is not content-neutral.

Defendant relies on *Ward v. Rock Against Racism* for the proposition that content-neutrality is determined by the government's purpose behind the restriction, not the content that is restricted. In *Ward,* the Supreme Court held that "[t]he principle inquiry in determining content neutrality, in speech cases generally, and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration." *Ward,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (citations omitted). The city thus proffers that since they are not concerned with limiting political messages, just the proliferation of signs, the ordinance is content neutral.

The regulation in *Ward,* however, required that anyone holding a concert in the city's outdoor band stage must use sound amplification equipment and a technician provided by the city. *Id.* at 784, 109 S.Ct. 2746. It was enacted to ensure a quality performance and the tranquility of the surrounding neighborhoods. *Id.* at 785–86,

109 S.Ct. 2746. The regulation required that the city provide top-quality sound equipment and an experienced sound technician who must defer to the performers regarding volume and sound mix when possible. *Id.* at 788, 109 S.Ct. 2746. In other words, although the regulation restricted available sound levels to some degree, it did not prevent any speech from taking place. Hence, after the portion already quoted, the Court stated:

> A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an **incidental effect** on some speakers or messages, but not others. Government regulation of expressive activity is content neutral so long as it is **justified** without reference to the content of the regulated speech."

*Id.* at 791, 109 S.Ct. 2746 (emphasis added in part, citations and quotations omitted). In *Ward,* the regulation applied to **all** speech at the facility and only **incidentally** affected the possible volume levels which could be used. Here, the Troy ordinance applies only to political signs and **completely** prevents any political signs above two in number. As such, *Ward* is distinguishable from the present case.

Defendant also relies on *Wheeler v. Commissioner of Highways,* 822 F.2d 586 (6th Cir.1987), for the content-neutrality of their ordinance. The ordinance in *Wheeler* was content-neutral because it restricted signs not on the basis of their content, but on whether that content was related to an activity taking place on the premises. *Id.* at 591. The Troy ordinance, however, is distinguishable because, while it makes the on-premises distinction in limiting "for sale" and directional signs, it makes no distinction in limiting political signs.

Based on the foregoing analysis, the Court finds that the city's ordinance is likely to be determined to be content-based. Since failure to meet any of the three requirements of a valid time, place, or manner restriction makes the restriction unconstitutional, the Court determines that the restriction is likely to be an invalid time, place, or manner restriction. Further inquiry into the remaining two factors is, therefore, not required. Nevertheless, the Court notes that while this Court has not addressed whether the two-sign limit on political signs meets the third factor of a valid time, place, or manner restriction, the Fourth Circuit has. The Fourth Circuit determined that such a two-sign limit does not leave open ample alternatives means because the "alternatives are insufficient in that they require too much time involvement (e.g., handbilling or canvassing), or too much expense." *Arlington County,* 983 F.2d at 595. Although this Court is not bound by such precedent, it is persuasive and lends support to Plaintiff's likelihood of success on the merits.

Furthermore, the Supreme Court has rejected an outright ban on yard signs, holding that the available alternatives to yard signs were not "adequate alternatives." *City of Ladue,* 512 U.S. at 56, 114 S.Ct. 2038. The Court reasoned that "a person who puts up a sign at her residence often intends to reach neighbors, an audience that could not be reached nearly as well by other means." *Id.* at 57, 114 S.Ct. 2038. Given this precedent, and the fact that Troy's ordinance prevents Plaintiff from displaying signs for all the candidates he wishes to support, it is likely that the Court will find that Troy's ordinance does not leave open alternative means for communicating the desired message.

**2. Whether Troy's ordinance is a valid content-based speech restriction.**

█ An invalid, content-based, time, place, or manner restriction may still be a valid restriction generally if it can survive

the strict scrutiny applied to content-based speech restrictions. To do so it must be shown that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos*, 485 U.S. at 321, 108 S.Ct. 1157 (quoting *Perry Education Assn.*, 460 U.S. at 45, 103 S.Ct. 948).

When faced with a challenge to a similar content-based outdoor sign ordinance, another court in this district held that "[a]lthough 'safety' and 'aesthetics' are substantial government interests, they are not compelling enough to justify content-based restriction on fully-protected, noncommercial speech." *King Enter., Inc., v. Thomas Township*, 215 F.Supp.2d 891, 910 (E.D.Mich.2002)(Lawson, J.). This Court also notes that

> residents have the same strong incentive to keep their property values up and to prevent visual clutter in their yards and neighborhoods as does the city. The private interests of owners in the market value of their property should **very substantially diminish the city's concerns regarding the unlimited proliferation of signs.**

*Dimas*, 939 F.Supp. at 557 (citing *City of Ladue*, 512 U.S. at 58, 114 S.Ct. 2038) (emphasis added). "Residents' self-interest diminishes the danger of the 'unlimited' proliferation of residential signs that concerns the [city]." *City of Ladue*, 512 U.S. at 58, 114 S.Ct. 2038. This Court is in agreement, and determines that it is unlikely that the city will be able to meet the compelling interest requirement of strict scrutiny.

Finally, the degree of narrow tailoring required by strict scrutiny necessitates a least-restrictive-alternative analysis. *See Ward*, 491 U.S. at 800 n. 6, 109 S.Ct. 2746. Given the reasoning of *Dimas* and *Arlington County*, this Court finds that it is highly unlikely that a limit on the number of political signs, such as Troy's two sign limit, is the least restrictive alternative. *Dimas*, 939 F.Supp. at 557 ("In addition, Defendant's one election sign per candidate, per issue, and per opinion limitation 'severely infringes on speech by preventing homeowners from expressing [their] support for more than one candidate when there [may be] numerous contested elections.' ")(citing *Arlington County*, 983 F.2d at 594).

### 3. Summary

Because it is unlikely that Troy's ordinance will meet the requirements of a valid time, place, or manner restriction, or pass strict scrutiny, there is a strong likelihood that the Court will find Troy's ordinance unconstitutional. Thus Plaintiff meets the first requirement for a preliminary injunction: he has a strong likelihood of success on the merits.

### B. Plaintiff will suffer irreparable injury without the preliminary injunction

■■ In general, in order to obtain a temporary restraining order, the injury that would result in the absence of the injunction must be irreparable, not merely substantial. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Plaintiff will suffer irreparable injury if he is prevented from displaying more than two political yard signs. This is because the loss of a First Amendment right constitutes irreparable harm as a matter of law. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998). "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Finally, "[e]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive re-

lief." *G & V Lounge, Inc. v. Michigan Liquor Control Commission,* 23 F.3d 1071, 1078 (6th Cir.1994).

### C. Issuing the preliminary injunction order would not cause substantial harm to others

It does not appear from the record that issuing the preliminary injunction would cause substantial harm to others. As mentioned above, the city "residents' self-interest diminishes the danger of the 'unlimited' proliferation of residential signs that concerns the [city]." *City of Ladue,* 512 U.S. at 58, 114 S.Ct. 2038. Consequently, enjoining the enforcement of the two-sign ordinance will not significantly increase the overall number of signs. Importantly, enjoining the two-sign ordinance could increase only the number of political signs, and it is unlikely that an increase in constitutionally-protected, political speech could be a substantial harm to anyone.

### D. The public interest would be served by issuance of the injunction

This Court has previously noted that "in most cases, the 'public interest' factor seems negligible." *Ramik v. Darling Int'l, Inc.,* 161 F.Supp.2d 772, 778 (E.D.Mich.2001).(Gadola, J.) Nevertheless, the Sixth Circuit has said that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib.,* 154 F.3d at 288. *See also Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 436 (6th Cir.2004). Thus, it is in the public interest to enjoin Troy's two-sign ordinance.

### III. CONCLUSION

All four factors, including the most important factor of a strong likelihood of success, favor Plaintiff. Therefore, the Court will grant Plaintiff's motion for a preliminary injunction. Furthermore,

since it appears at this time that the city will suffer no loss or damage by reason of the issuance of this preliminary injunction, no bond or other security is required of Plaintiff. *See* Fed.R.Civ.P. 65(c).

**ACCORDINGLY, IT IS HEREBY ORDERED** that the Plaintiff's motion for a preliminary injunction [docket entry 5] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant City of Troy, its officers, agents, directors, servants, employees, attorneys, and those acting at its direction or supervision or acting in concert with Defendant are hereby **PRELIMINARILY ENJOINED** until further notice of this Court from enforcing Chapter 85–A, Section (3)(b)(1), of the Troy City Code.

**SO ORDERED.**