GEORGIA OUTDOOR ADVERTISING, INC., d/b/a Allison Outdoor Advertising, Inc., a Georgia Corporation, Plaintiff–Appellant,

v.

The CITY OF WAYNESVILLE, a North Carolina Municipal Corporation, Defendant–Appellee.

No. 86–1267.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1987.

Decided Nov. 13, 1987.

**44**

Albert Lee Sneed, Jr., Asheville, N.C., (Michelle Rippon, Van Winkle, Buck, Wall, Starnes & Davis, Asheville, N.C., on brief), for plaintiff-appellant.

Katherine Slaughter McNett, Southern Environmental Law Center, Rodney Miller Ligon, Jr. (Carlyle, Sandridge & Rice, Winston Salem, N.C., Frank G. Queen, Michael Bonfoey, Smith, Bonfoey & Queen, Waynesville, N.C., on brief), for defendant-appellee.

Before WIDENER and HALL, Circuit Judges, and HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

The plaintiff, Georgia Outdoor Advertising, Inc., appeals from a grant of summary judgment in favor of the defendant, the City of Waynesville. We affirm the district court's decision in part and remand the case for further proceedings.

The plaintiff erects and maintains a number of outdoor advertising signs within the City of Waynesville and within one mile outside of Waynesville, the area covered by the ordinance in question. In the most general terms, plaintiff leases the right to erect and maintain a sign from a landowner for a term of years and then leases the sign to advertisers. Most of the advertising relates to trade and custom, but a small part relates to non-commercial advertising such as churches, etc. The terms of the leases between the landowners and the plaintiff vary but may extend for a period of 10 years. An affidavit in the record discloses that the life of the signs erected may be as long as 30 to 50 years.

Plaintiff brought this action to have an ordinance of the City of Waynesville enjoined as unconstitutional. The ordinance in question, adopted November 26, 1985, effectively outlaws all its billboards within the jurisdiction of the City.[1] The plaintiff attacks this ordinance on four basic fronts: (1) the ordinance violates the First Amendment free speech rights of the plaintiff and the plaintiff's clients by outlawing a protected form of expression, commercial off-premise advertising, (2) the stated objectives of the ordinance (traffic safety and aesthetics) are neither rationally related to the ordinance nor adequate to support its constitutionality; (3) the ordinance violates due process of law by causing the total destruction of plaintiff's business; and (4) the ordinance constitutes a taking of private property for public use without just compensation.

The ordinance at issue here is far-reaching, and there is little doubt that it will ultimately destroy plaintiff's business within the City of Waynesville's zoning jurisdic-

**1.** With only few exceptions not pertinent here, such as for-sale and construction signs, only on-premise signs are allowed, meaning signs advertising goods or services provided on the premises upon which signs are erected.

The ordinance further provides that: "Any sign authorized in this ordinance is allowed to contain non-commercial copy in lieu of any other copy."

That non-conforming signs will be discontinued within four years of the effective date of the ordinance is another provision which the ordinance called amortization.

tion. The issues we address, however, have already been considered in cases that constitute persuasive or controlling precedent, and we take up each of them in turn.

Plaintiff's principal argument against the constitutionality of the Waynesville ordinance is that it unduly infringes upon the free speech rights of plaintiff and its advertising customers. Obviously, any law that has as its purpose the complete prohibition of a particular form of speech must be carefully scrutinized.[2] The distinct speech interests implicated here are the interest of those seeking to convey commercial messages on billboards and the interest of those seeking to communicate non-commercial messages. With reference to that point, the Supreme Court has frequently stated that commercial speech is not entitled to as much protection as non-commercial speech, see e.g., *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 562–63, 100 S.Ct. 2343, 2349–50, 65 L.Ed.2d 341 (1980), and in *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Court established that the rights of those who seek to convey commercial messages are not unconstitutionally infringed by a law banning all offsite billboards.

*Metromedia* was a decision striking down a San Diego, California billboard ordinance very similar to the one before us today.[3] Four justices agreed, in the opinion authored by Justice White, that the ordinance was unconstitutional because it accorded more protection to commercial speech than to non-commercial speech.[4] Justices Brennan and Blackmun found the ordinance invalid because it totally prohibit-

ed a protected form of speech without sufficient justification and without being narrowly drawn. The three dissenting opinions by Justice Stevens, Chief Justice Burger, and Justice (now Chief Justice) Rehnquist each generally concluded that a municipality may constitutionally ban all billboards, and that the allowing of some commercial signs did not render the ordinance infirm.

■ The four justices of the plurality found that "insofar as it regulates commercial speech the San Diego ordinance meets the constitutional requirements of *Central Hudson.*" 453 U.S. at 512, 101 S.Ct. at 2895. Since three other justices found no constitutional defect in the San Diego ordinance, it would appear that this statement of the plurality is now the law. The district court was therefore correct in determining that the Waynesville ordinance likewise did not unconstitutionally infringe the right of commercial speech.

Although *Metromedia* held the San Diego ordinance invalid because it preferred commercial to non-commercial speech (non-commercial speech by billboard was banned, both on-site and off), the Court did not discuss the extent to which off-premise, non-commercial billboards could be banned. However, this circuit has since construed *Metromedia* adversely to plaintiff's remaining First Amendment arguments. In *Major Media of the Southeast, Inc. v. City of Raleigh,* 792 F.2d 1269 (4th Cir.1986), this court found that the Supreme Court "determined in *Metromedia* . . . that a city may justifiably prohibit all off-premise signs or billboards for aesthetic and safety reasons . . . ."[5] Id. at 1272. Therefore,

**2.** The Court has often stated that each form of expression is a law unto itself. See, e.g., *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975). Some forms of expression obviously carry with them effects wholly separate from the message conveyed, and hence the scope of regulation over these forms is much greater. Billboards would fall into this category. See *Metromedia,* infra, 453 U.S. at p. 501, 101 S.Ct. at 2889.

**3.** The only significant distinction between the two ordinances is discussed infra.

**4.** Under the San Diego ordinance, the only large outdoor signs allowed were those advertising

services provided or goods provided or manufactured on the premises where the sign is located. Non-commercial billboards were banned altogether with insignificant exceptions. *Metromedia,* 453 U.S. at 503, 101 S.Ct. at 2890.

**5.** The Raleigh ordinance did not go as far in its territorial prohibition of off-premise billboards as does the Waynesville ordinance. In Raleigh, off-premise billboards were banned in all the city except in the industrial zones. Waynesville's ordinance bans off-premise billboards in the entire city and zoning area. 792 F.2d at 1270.

since all off-premise billboards could constitutionally be outlawed in Waynesville, the remaining basis for a First Amendment challenge to this ordinance is that it may prefer commercial to non-commercial speech.[6]

As noted above, the Waynesville ordinance is virtually identical to the San Diego ordinance in most significant aspects. Both effect virtually a complete ban on off-premise outdoor advertising, while allowing on-premise commercial advertising. The Waynesville ordinance varies from the San Diego ordinance in one crucial way, however. The Waynesville ordinance also contains the following provision: "Any sign authorized in this ordinance is allowed to contain non-commercial copy in lieu of other copy." The Raleigh ordinance addressed in *Major Media* contained an almost identical clause.[7] The *Major Media* court held that such a clause, effectively allowing any non-commercial message to be placed on a conforming sign, removed the preference toward commercial speech that was fatal to the San Diego ordinance. 792 F.2d at 1272. The court also held that the possibility that owners of on-premise signs would not allow their signs to be used for non-commercial messages was not constitutionally significant, since that would "derive from the decisions of the individual property owners ... [and not] the Raleigh ordinance itself." 792 F.2d at 1273. The same result must be reached in this case.

■ Plaintiff's next contention is that the city's stated purposes for enactment of this ordinance are inadequate to support its constitutionality. The city justifies the law on two grounds, traffic safety and aesthetics. As the district court noted, plaintiff offered evidence tending to show that traffic safety is not advanced by a ban of billboards. Plaintiff asserts that the city's articulated goal of traffic safety is a mere pretense, and that in reality the ordinance

is motivated by the sole purpose of aesthetics. This argument is foreclosed by our decision in *Major Media*, p. 1272, construing *Metromedia*, "[453 U.S.] p. 509–10 [101 S.Ct. at 2893]" as justifying the San Diego ordinance on the grounds of "aesthetic and safety reasons." On p. 509, 101 S.Ct. at 2893 of *Metromedia* the plurality opinion, the Court rejected this traffic safety argument made here, and on p. 510, 101 S.Ct. at 2893 it rejected the aesthetic argument. In any event, we note that aesthetics alone is a sufficient justification for an exercise of the police power. See *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984); *Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). It requires neither elaboration nor citation to say that an ordinance regulating billboards is likely to advance the objective of enhancing the beauty of a city, and that no less intrusive method would adequately protect the city's interest.

■ Plaintiff's contention that due process prevents the government from enacting laws having the effect of completely destroying an ongoing business is likewise without merit. As far back as *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887), the Court has stated that an exercise of the police power is not unconstitutional merely because it completely destroys some businesses, whether directly or indirectly. In *Mugler*, Kansas' prohibition of alcohol rendered the plaintiff's brewery useless. The Court, however, noted no incompatibility between the requirements of due process and "the principle, equally vital ..., that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community." Id. at 665, 8 S.Ct. at 299. Since there is no contention that the law in this case is or will be arbitrarily applied, the fact that the Waynesville billboard ordinance will eventually destroy plaintiff's

---

**6.** The requirement that a billboard-restricting ordinance not prefer commercial to non-commercial speech would seem fairly distilled from *Metromedia*. In addition to the four justices of the plurality, the opinion of Justice Brennan implicitly supports this theory.

**7.** The clause in the Raleigh ordinance stated: "Any sign authorized in this chapter is allowed to contain non-commercial copy in lieu of any other copy." 792 F.2d at 1271.

business does not make it constitutionally invalid.

 The district court did err, however, in refusing to address plaintiff's claim that the ordinance effects a taking without just compensation as prohibited by the Fifth and Fourteenth Amendments. Plaintiff argues that since the city has outlawed the only commercially viable use of the land plaintiff has leased (extending as far as 10 years into the future), just compensation is required, and is not provided by the four-year amortization period included in the ordinance. The district court declined to reach this issue because of a saving clause in the ordinance providing that if any portion of the ordinance should be declared unconstitutional then that portion should be severed and the remaining portion enforced to its constitutional limit. It reasoned that, even if it should rule that the ordinance's amortization period failed to prevent an unconstitutional taking, that portion would be severed and the plaintiff would still not be entitled to injunctive relief, but would rather be limited to an action for just compensation. This was a matter for the state courts, in the opinion of the district court. We disagree. The question of whether a particular zoning ordinance is so onerous as to require just compensation under the Fifth and Fourteenth Amendments to the federal constitution obviously presents a federal question, and this question was properly before the district court. Since the court had jurisdiction to hear that claim, which was essentially related to the other claims of plaintiff in this case, it was improper to require plaintiff to file another action solely to determine the taking or just compensation issue. The fact that plaintiff may have a remedy in the state courts does not excuse a federal court from deciding a case in which it has jurisdiction. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 264 (1821). The taking aspect of the case is accordingly remanded to the district court for consideration of that claim, upon the merits of which we express no opinion.

AFFIRMED IN PART AND REMANDED.[8]

---

8. The district court did not address, and neither do we, the state law questions of state due process and the authority of Waynesville to enact the ordinance in question. On remand, those questions should be considered, if appropriate.