**REVERE NATIONAL CORPORATION, INC., Plaintiff,**

v.

**PRINCE GEORGE'S COUNTY, Defendant.**

Civ. No. N–92–254.

United States District Court, D. Maryland.

Feb. 19, 1993.

Stanley Derwin Brown, and McCarthy, Bacon and Costello, Landover, MD, for plaintiff.

Alan E. D'Appolito, and Maurene Epps, and Office of County Atty., Upper Marlboro, MD, for defendant.

## MEMORANDUM OPINION

NORTHROP, Senior District Judge.

Pending before this Court is Plaintiff's Renewed Motion for Summary Judgment (Paper Nos. 13 & 16) and Defendant's Motion to Reconsider and Set Aside Order (Paper Nos. 17). No hearing on these motions is necessary, as hearings on the underlying issues raised were held February 28th and April 20th of 1992. Local Rule 105.6 (D.Md.1992). After a review of the pleadings and in consideration of the arguments presented in the briefs and at the hearings, the Court will grant Plaintiff's Renewed Motion for Summary Judgment and deny Defendant's Motion to Reconsider and Set Aside Order.

## I. *Introduction*

This case concerns a challenge under the First and Fourteenth Amendments of the United States Constitution to Part 12 of Prince George's County's zoning ordinance ("Ordinance"). The Ordinance consists of a comprehensive set of regulations governing the use of all signs in all zones in Prince George's County ("County"). For example, the Ordinance regulates free standing signs and signs attached to buildings, temporary political signs on residential property, bill-

boards that carry commercial and noncommercial messages located in industrial zones, and signs attached to buildings that advertise or identify the business or resident located in the building. The Ordinance also governs how sign permits are obtained, how the law is enforced, which signs are exempt from the permit process, how large the signs can be, and where a sign may be located.

The sign regulations are intended to foster, among other goals, aesthetics, traffic safety, and the preservation of property values. *See* Ordinance Part 12 § 27–589. The Ordinance also is intended to promote sign usage (including billboards) that is compatible with the various zoned land uses, *e.g.* industrial, residential, highway, and rural.

The Ordinance defines a "sign" as:

[A]ny letter, word, numerical, figure, design, color, illumination, projected image, picture, illustration, decoration, emblem, symbol, trademark, flag, banner, pennant, or other device, which is used:

(A) To announce, direct attention to, identify or otherwise make anything known; or

(B) To attract attention.

Part 2 § 27–107.1(210). In pertinent part, a billboard or outdoor advertising sign is defined as:

[A] sign ... which directs attention to a business, commodity, service, entertainment, event or other activity conducted, sold, or offered elsewhere than upon the property on which the "Sign" is located.

Part 2 § 27–107.1(213).[1] As such, a billboard is any sign referring to a product or carrying a message that is not related to the property where the sign is located. This definition constitutes a short hand reference for an off-site sign. *See e.g., Georgia Outdoor Advertising v. City of Waynesville*, 833 F.2d 43, 45 (4th Cir.1987). Signs whose content refers to a business, or relates to the premises where the sign is displayed, are called on-site or on-premises signs. *Id.* at 44; *see also* "Sign, Business" Part 2 § 27–107.1(211).

Plaintiff, Revere National Corporation ("Revere"), is in the outdoor advertising business. Revere is the tenth largest billboard company in the nation, controls approximately two percent of a one billion dollar industry and Revere owns 7200 billboards nation-wide. Approximately 112 billboard sites are leased by the Plaintiff in the County.

Plaintiff's billboards convey both commercial and non-commercial messages. Revere's customers who advertise commercially on billboards include hotels, restaurants, motor services, and tourist attractions. Its clientele who use billboards for noncommercial messages include: The American Red Cross, Catholic Charities, March of Dimes, the National Association For the Advancement of Colored People, Big Brothers, Big Sisters, and Crime Solvers. The non-commercial messages conveyed slogans such as "Support March of Dimes, Help Prevent Birth Defects," "American Red Cross Will Help. Will You?,". "Friends don't let friends ... drive drunk," and "Make a Difference in a Boy's Life ... Be a Big Brother."

On November 5, 1991, the County Council adopted an ordinance that prohibited the erection of all new billboards within the County. Council Bill No. CB–24–1991 ("CB–24–1991"). The amendment modified the Ordinance's sections concerning signs that are prohibited. Part 12 § 27–593. This amendment became effective on December 31, 1991.

On January 27, 1992, the Defendant denied Revere's request for three billboard applications. The County's denial was predicated upon the recently enacted ordinance CB–24–1991, which banned all off-site signs, or under the County's definition, all billboards. *See* Part 12 § 27–593(13) (adding "outdoor advertising signs (billboards)" to the list of prohibited signs).

Plaintiff filed this action requesting preliminary injunctive relief. Plaintiff sought a declaration that the Prince George's County zoning ordinance was unconstitutional on its face and as applied to the Plaintiff because it violates Plaintiff's right to free speech guar-

---

**1.** Under the current version of the Ordinance, the definition of a billboard is substantially similar to its original version. The definition was amended by the County to clarify that billboards are not just off-site signs containing commercial material, but also include off-site signs carrying noncommercial messages.

anteed by the First and Fourteenth Amendments. The basis of the Ordinance's alleged infirmity was that it accorded greater protection to commercial speech than to traditionally higher valued noncommercial speech. Further, the Ordinance, according to the Plaintiff, improperly preferred certain subject matter categories of noncommercial speech.

A hearing was conducted by this Court on February 28, 1992, and an Order issued on March 3, 1992. The Court found that the Ordinance contained the two fatal constitutional flaws cited by Plaintiff.[2] First, the Ordinance improperly preferred on-site commercial speech over on-site noncommercial speech. *See Metromedia, Incorporated v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of *noncommercial* messages); *Georgia Outdoor Advertising, Inc. v. City of Waynesville,* 833 F.2d 43 (4th Cir.1987). Second, the Ordinance unconstitutionally preferred certain types of noncommercial speech over other types of noncommercial speech. *See Metromedia,* 453 U.S. at 514–17, 101 S.Ct. at 2896–97.

Because of these infirmities, Ordinance violated Plaintiff's First and Fourteenth Amendment rights under the U.S. Constitution. *Id.* at 490, 101 S.Ct. at 2882. Consequently, the Court determined that Plaintiff was likely to suffer irreparable damage. *Elrod v. Burns,* 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976). Based on this assessment, the Court granted Plaintiff's request for a preliminary injunction. *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir. 1977).

The Court specifically enjoined the County from enforcing the Ordinance unless the County: 1) amended the offending provisions; or 2) struck (or deleted) the offending sections; or 3) produced sufficient reasons why the Ordinance did not violate the Constitution.

In response to the Court Order, the County amended the Ordinance. *See* Council Bill No. CB–23–1992 ("CB–23–1992"). The primary change was that the section on the Applicability of the Ordinance was amended to read:

> Any sign authorized in this Part may contain non-commercial copy, in lieu of other commercial or non-commercial copy not withstanding any other provision of this Part. The placement of non-commercial copy on any authorized sign does not make such sign an outdoor advertising sign.

Part 12 § 27–590(c). CB–23–1992 also included an amendment of the permit requirement for certain categories of signs containing non-commercial speech. Part 12 § 27–602(a)(15)(16) as amended by CB–23–1992. The amendment excluded from the permit requirement "any flag, emblem, insignia, poster, or other display of a nation, state or other political subdivision." *Id* at § 27–602(a)(15) as amended by CB–23–1992. Moreover, the County exempted from the permit process "temporary signs relating to an educational, charitable, religious, or similar group's campaign, drive promotion, or event." Part 12 § 27–602(a)(16) as amended by CB–23–1992.

Plaintiff renewed its motion for summary judgment and requested that the preliminary injunction be extended (Paper No. 13). The basis of Plaintiff's argument for additional relief was that the ordinance still preferred commercial over noncommercial speech and still preferred, without proper constitutional justification, certain categories of noncommercial speech. Plaintiff did, however, make an additional argument against the ordinance as amended by CB–23–1992.

According to Plaintiff, reading the ordinance as amended by CB–23–1992 made the County's sign and billboard restrictions impossible to interpret. The Ordinance prohibited constitutionally protected speech and did

---

2. For a specific list of the Ordinance provisions that the Court found violated the U.S. Constitution, *see* Papers No. 10 & 11.

not provide clear standards for its application.

The Court granted Revere's request for another preliminary injunction (Paper No. 16). In addition, the Court Order stated that summary judgment would be granted in favor of Plaintiff unless the County supported its contention that the Ordinance complied with constitutional requirements, or again, amended the Ordinance to comply with the Constitution (Paper No. 16). In response to the Court's Order, Defendant filed its Motion to Reconsider and Set Aside Order (Paper No. 17). In that Motion, the County maintains that CB-23-1992 resolves all Constitutional maladies.

In an effort to clarify the County's position, the Court addressed certain questions to the parties for briefing (Paper No. 20). Both Plaintiff and Defendant submitted their responses to the Court's queries (Paper Nos. 21, 22 & 23). As such, Defendant's Motion to Reconsider and Set Aside Order is ripe for this Court's Consideration.

Moreover, Plaintiff's Renewed Motion for Summary Judgment is also ripe for this Court's judgment. Although preliminary injunctive relief was granted, the Court provided the County with an opportunity either to explain how Plaintiff's arguments and the Court's judgments were deficient, or to amend the Ordinance in order to correct the constitutional maladies. The Court allowed for further briefing because constitutional First Amendment jurisprudence in this area is confusing, and the interests local governments seek to promote through sign and billboard regulation are often substantial.

The Court is sympathetic to the plight of the County. The authority of local governments to regulate areas of local concern should not be jeopardized by overly expansive interpretations of the Constitution. Federal courts should not substitute their judgment for that of local officials where there is not a transgression of the United States Constitution or federal law.

In the instant case, the County's promotion of aesthetics and traffic safety through the regulation of billboards is acknowledged by the Supreme Court and this Circuit as a substantial government interest. *See Metromedia*, 453 U.S. at 507–08, 101 S.Ct. at 2892–93; *Georgia Outdoor Advertising*, 833 F.2d at 45; *Major Media of the Southeast v. City of Raleigh*, 792 F.2d 1269, 1272 (4th Cir.1986). Thus, an overly broad interpretation of the First Amendment would substantially impair the County's ability to accomplish its objectives. Indeed, neither this Court, nor any court, would suggest that a government could not regulate the "time, place or manner" of speech if a significant government interest is advanced. *Metromedia*, 453 U.S. at 491, 101 S.Ct. at 2884.

While courts defer to local autonomy as to "time, place or manner" restrictions when a substantial local government interest is a stake, defining exactly what regulations pass constitutional muster can be a daunting task for any government or court. General rules with clear application are difficult to come by in free speech analysis, where the Supreme Court has declared that "[e]ach method of communicating ideas is 'a law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method." *Metromedia*, 453 U.S. at 501, 101 S.Ct. at 2889 (citations omitted).

Where, as here, an Ordinance comprehensively, covers residential and industrial placement of signs and billboards that carry both commercial and noncommercial messages, a County actually may be regulating many different areas of First Amendment law, each of which is a law unto itself. For example, in *Metromedia*, the Supreme Court limited its analysis to the "law of billboards." *Id.* at 501, 101 S.Ct. at 2889. Similarly, the Fourth Circuit recently limited its review only to the law of *"temporary* political signs on *residential* property." *See Arlington County Republican Committee v. Arlington County*, 983 F.2d 587, 591 (4th Cir.1993) (emphasis added in original). For the law of signs on public property, another area of the law would need to be consulted. *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Even more areas of the law must be considered when weighing local sign restrictions that burden commercial speech. *See e.g., Central*

*Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *Board of Trustees of State University of New York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Similarly, to the extent sign regulations burden noncommercial speech, another test is implicated. *See Arlington County Republican Committee,* 983 F.2d 587, 591–92. Finally, the discretion given to local officials for administering an ordinance's restrictions must also be reviewed. *See e.g., Metromedia,* 453 U.S. at 537–38, 101 S.Ct. at 2907–08 (Brennan, J. concurring); *Hague v. CIO,* 307 U.S. 496, 516, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939).

Without careful attention to court precedent, the many different areas of law against which the sign restrictions need to be evaluated appear fractured, possibly leading the County to conclude that a "Balkanization" of First Amendment analysis has occurred herein.[3] It is both the substantial nature of the County's interests and the recognition of the difficulty in evaluating the constitutionality of the Ordinance that led the Court to issue the preliminary injunction, preventing continued irreparable injury, while giving the County every opportunity to save its ordinance by amending or explaining its position.[4]

Unfortunately, the County's response to the Court's invitation to clarify its position has provided little insight into the reasons for the County's continued assertions that the Ordinance is constitutional. The County only reiterates in conclusory fashion that CB–23–1992 corrects the problems identified by the Court. *Cf.* Paper No. 17 with Paper No. 21.

Under these circumstances, and with no material facts in dispute, there is no reason not to consider summary judgment. The County's violation of constitutional requirements imposes a heavy burden upon the free speech rights of the Plaintiff, and has a potentially chilling effect on the free speech rights of others.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Regarding materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Regarding genuineness, a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The party seeking summary judgment bears the initial burden to show that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). This burden does not require the moving party to produce *evidence* showing the absence of a genuine issue of material fact, but only to point out the absence of a material fact. *Id.* (emphasis added). In response, the adverse (non-moving) party, in this case the defendant, "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

---

**3.** It should be noted that this Court's analysis proceeds along the same two step process as that outlined by the Fourth Circuit. *See Arlington County Republican Committee v. Arlington County,* 983 F.2d 587, 591–95 (4th Cir.1992). In this case, however, certain aspects are not content neutral, unlike *Arlington County Republican Committee. Id.*

**4.** In an effort to save its troubled Ordinance, the County asked the Court to sever the unconstitutional provisions. *See* Paper No. 7. For reasons explained below, severance is not possible. *See* Memorandum Opinion II D.

The Supreme Court has stated that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's case will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in the non-moving party's favor. *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

## B. Constitutional Infirmities with the Ordinance as Amended by CB–24–1991 [5]

As amended by CB–24–1991, the Ordinance suffered from two types of constitutional maladies. First, the Ordinance preferred commercial speech over noncommercial speech. Second, the Ordinance preferred, without proper constitutional justification, certain categories of noncommercial and commercial speech. Each of these infringements on the first amendment will be discussed in turn.

■ The Ordinance contained a preference for commercial over noncommercial speech in that several provisions that prohibited signs carrying noncommercial speech allowed signs containing commercial copy. For example, the Ordinance permitted on-site commercial or business signs—signs advertising a business or product sold on the site where the sign is located. *See* Part 12 § 27–593(a)(6). No allowance was made, however, for on-site signs carrying noncommercial messages; they were simply banned.

Moreover, the Ordinance permitted signs in residential zones that identified a business, but no similar provision was included to allow

for signs containing noncommercial messages. As such a grocery store could have erected a sign that read "get a free pot with every chicken bought," but that same grocery store could not erect a sign (with the same physical dimensions) that read "vote Roosevelt—he'll put a chicken in every pot." Such a dichotomy in the treatment of commercial and noncommercial speech is not permissible. *Metromedia,* 453 U.S. at 514–16, 101 S.Ct. at 2896–97; *Georgia Outdoor Advertising,* 833 F.2d at 45–46.

The *Metromedia* Court struck a San Diego ordinance in part because that law carried the same improper preference for commercial on-site signs. *See Metromedia,* 453 U.S. at 513, 101 S.Ct. at 2895. The *Metromedia* Court found that signs containing noncommercial messages would not undermine San Diego's purposes for enacting the sign restrictions anymore than on-site signs carrying commercial copy. The noncommercial signs would not be anymore distracting or non-aesthetic than a sign carrying a commercial message. *Id.* Nor was the San Diego ordinance a permitted time, place, or manner restriction, because it banned on-site noncommercial signs based on their content. *Id.*

In the instant case, the Defendant's Ordinance carried the same impermissible preference for commercial speech. Defendants' Ordinance could not withstand Plaintiff's constitutional challenge. *Id.* at 514–16, 101 S.Ct. at 2896–97.

Second, the County Ordinance was not content neutral, but contained impermissible preferences for certain categories of noncommercial speech. *Id.* The *Metromedia* Court struck the San Diego ordinance, in part, because of these same deficiencies. The San Diego ordinance exempted from its requirements twelve categories of signs, including: government signs; signs located at public bus stops; commemorative historical plaques; religious symbols; signs depicting time, temperature and news; and temporary political campaign signs. *Id.* at 494–95, 101 S.Ct. at 2885–86. These preferences for

5. Although CB–23–1992 corrected some of the problems associated with CB–24–1991, the Court reviews the issues raised by the earlier amendment to the Ordinance because the constitutional problems of the later amendment have their genesis in CB–24–1991.

signs carrying certain noncommercial based messages were also held to be unconstitutional. *Id.* at 513, 101 S.Ct. at 2895.

■ As with the sign regulations stricken in *Metromedia*, the County's Ordinance in this case favored certain categories of speech without proper justification. For example, the Ordinance exempted twenty-two categories of signs from the permitting requirement. *See* Part 12 § 27–602(a). The Ordinance exempted temporary real estate signs, on-site signs advertising of farm products, signs identifying the name of a community or residence, business signs, historical plaques, and memorial signs. Moreover, other provisions contained even more preferences for gateway, motor vehicle inspection, and surface mining signs. *See* Part 12 §§ 27–626, 27–628, 27–629.

> With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse: To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth.

*Metromedia,* 453 U.S. at 515, 101 S.Ct. at 2896 (citations omitted); *see also Metromedia, Inc. v. Mayor and City Council of Baltimore,* 538 F.Supp. 1183, 1187 (D.Md.1982) (sign ordinance invalidated because it improperly limited a sign's message solely to the identification of the premises). Such exemptions violate constitutional standards. *See Metromedia,* 453 U.S. at 514–16, 101 S.Ct. at 2896–97.

## C. Constitutional Infirmities with the Ordinance as Amended by CB–23–1992

■ Defendant asserts that the constitutional infirmities were resolved when the County amended its sign and billboard Ordinance in response to this Court's preliminary injunction. Council Bill No. 23, adopted March, 1992 ("CB–23–1992"). CB–23–1992 amended the County ordinance in two ways. First, it created additional content based preferences for certain subject matter categories of noncommercial speech. *See* Part 12 § 27–602(15) and (16) as amended by CB–23–1992, exempting from the Ordinance's permit requirements, for example, the national emblem, the Maryland state flag, as well as temporary signs for charitable and religious events. By itself, this change would have exacerbated the Ordinance's constitutional problems, as the amendment clearly gives an improper preference to certain types of noncommercial speech. *Metromedia,* 453 U.S. at 514–516, 101 S.Ct. at 2896–97; *Metromedia, Inc. v. Mayor and City Council of Baltimore,* 538 F.Supp. 1183, 1187 (D.Md.1982).

The County's purpose for adopting these noncommercial speech preferences is more than a little curious. The preferences were clearly prohibited by this Court's Order granting Plaintiff's initial request for injunctive relief (Paper No. 10). Moreover, given the second part of the County's amendment, these content based preferences were themselves nullified. *See* Discussion *infra.* Indeed, the County bases its assertion that the Ordinance is Constitutional on the voiding of these and the other improper content based preferences.

The second part of the County's amendment changed the Ordinance's applicability. *See* Part 12 § 27–590(c). In pertinent part, CB–23–1992 states that any authorized sign "may contain noncommercial copy, in lieu of other commercial or noncommercial copy ..." *Id.* at § 27–590(c) as amended by CB–23–1992. According to the County, these words magically cleanse the constitutionally soiled Ordinance.

The County's argument is predicated on its understanding of both precedent and logic. The County asserts that the insertion of the amendment into the body of the Ordinance rids the sign law of its unconstitutional free speech impairments as a matter of logic. At first blush, § 27–590(c) as amended, does appear to eliminate the Ordinance's preference for commercial on-site speech. The Ordinance section that lists "prohibited signs" carries an improper preference that exempts on-site commercial advertising. *See* Part 12 § 27–593(a)(6). Since the amended § 27–590(c) would allow for any noncommercial speech to be inserted instead of on-site commercial copy, this impermissible preference for commercial over noncommercial speech is eliminated. This same analysis would apply

to exemptions for on-site commercial signs in residential neighborhoods. *See* Part 5 § 27–441(a)(3)(B). These formerly unconstitutional sections, would, when read without reference to any Ordinance provision apart from § 27–590(c) as amended, appear to conform to Supreme Court and Fourth Circuit Court standards.

The amended § 27–590(c) would also appear to correct the impermissible content based preferences in the Ordinance. As amended, § 27–590(c) would allow any noncommercial copy to be inserted instead of the content based noncommercial speech category in the Ordinance. *See* part 12 § 27–602(a) as amended by CB–23–1992. For example, the Ordinance contained improper content based exemptions from the permit requirement for gateway signs. These exemptions limited messages to identifying a community or residence. *See* Part 12 § 27–602(a)(4). When this content based preference is read along with § 27–590(c) as amended, these gateway signs may contain any noncommercial message as long as the sign abided by the Ordinance's time, place or manner regulations. *See* Part 12 § 27–602(a)(4) as amended by CB–23–1992. The same analysis supports the County's contention that the other twenty-one content based exemptions to the permit requirement are constitutional. *See* Part 12 § 27–602(a) as amended by CB–23–1992. Indeed, as already mentioned, the exemptions that the County placed in its amendment reduces these preferences for temporary religious events, for example, to simply a restriction that allows *any* noncommercial sign or billboard anywhere in the County.

These sections are not the only Ordinance provisions that carry content based preferences for certain categories of noncommercial and commercial speech. Other sections in Part 12, §§ 27–622 to 27–637, exempt another seventeen categories of signs. These exemptions include signs for wayside farm stands, signs for home occupations, professional use signs, certain window signs, directional real estate signs, surface mining signs, and signs for sand and gravel wet-processing. Presumably, each of these content based exemptions, when read with § 27–590(c) as amended, would allow any noncommercial messages.

These content based preferences draw attention to the Ordinance's underinclusiveness. The underinclusiveness of the Ordinance frustrates the law's intended purpose of promoting aesthetics and traffic safety, as it creates exemptions that will surely lead to the erection of more signs. As these signs can, after the adoption of § 27–590(c) as amended, contain any noncommercial copy, the County's attempt at promoting aesthetics and traffic safety by limiting the number of signs and billboards will be even further frustrated. Many of the restrictions are now reduced to simply geographic regulations. If, for example, one wanted to place a billboard carrying a noncommercial message along a road, all one would need to do is put a wayside farm stand next to the sign. *See* Part 12 §§ 27–622 and 27–590(c) as amended.

Beyond that, the content based preferences inserted by the County in CB–23–1992 do not carry any time, place or manner restrictions. For example, the state flag or seal, as well as signs for temporary religious events, may be placed anywhere, without restriction. *See* Part 12 §§ 27–602(a)(15) and (16). As these signs must, with the adoption of § 27–590(c) as amended, now contain noncommercial messages, these provisions create a blanket exemption for all noncommercial billboards and signs. Because a flag, for example, may be placed anywhere, as sign carrying, a noncommercial message can also be placed anywhere, without restriction, since the Ordinance carries no restrictions for flags. The County has created a rule for controlling the number of billboards that is almost swallowed by the County's exceptions in the Ordinance. The County acknowledged the Court's interpretation of the sign Ordinance is correct (Paper No. 21).

If these special exception provisions could be read only with respect to § 590(c) as amended, the law might pass constitutional muster. That the County decides to enact a law that is without effect, may not, in and of itself, raise constitutional concerns. First, these provisions when read by themselves, correct the constitutional problems raised by the Court in its initial Order (Paper No. 10).

Second, the underinclusiveness of the Ordinance may not violate free speech rights. *See Metromedia,* 453 U.S. at 511, 101 S.Ct. at 2894 (the underinclusiveness of a city ordinance that allowed noncommercial and on-site commercial copy but disallowed off-site commercial messages is not in and of itself unconstitutional).[6] Whatever the constitutional concerns raised by this issue are, they need not be resolved at this juncture because the Ordinance embodies infirmities whose unconstitutional colors go well beyond this "grey area."[7]

The real problem is that the special exemptions harbored in the Ordinance cannot be read only in reference to § 27–590(c) as amended. When the sign Ordinance is read in its entirety, giving full force to all of its provisions, the Ordinance both allows and prohibits the noncommercial speech authorized in the amended § 27–590(c). In other words, the language that the County offers as a way of meeting the *Metromedia* standard may be nullified by other provisions in the sign law. For example, before the adoption of CB–23–1992, the Ordinance allowed on-site commercial signs, but made no similar exemption for signs carrying noncommercial messages. *See* Part 12 § 27–593(a)(6). The amended § 27–590(c) corrected this constitutional malady by allowing any noncommercial copy to be inserted. However, when the content based exemptions that allow on-site commercial signs are read in light of the Ordinance's billboard definition, the noncommercial messages that were allowed are now prohibited. *Cf.* Part 12 § 27–593(a)(6) and § 27–107(a)(213). This problem occurs because the definition of a billboard applies to both commercial and noncommercial messages, and a billboard is defined as presenting a message not related to any activity conducted at the billboard's location, the billboard's definition still contains prohibitions against off-site noncommercial speech.

6. It should be mentioned, however, that the exemptions in the County's Ordinance appear to be far more extensive than those considered by the *Metromedia* Court. As such, the County's Ordinance may raise other constitutional problems. *See Discovery Network, Inc. v. City of Cincinnati,* 946 F.2d 464 (6th Cir.1991) (ordinance's minimal impact on its intended purpose could not justify its prohibition of newsboxes carrying commercial handbills).

7. The Ordinance also preferred, without justification, certain categories of commercial speech. The County contends that under its reading of Supreme Court authority it has unlimited discretion to regulate signs carrying commercial speech. (Paper No. 17 at 3–4). This assertion reveals the County's flawed understanding of commercial speech analysis. The classification of speech as commercial is the beginning, not the end, of the analysis. *See National Life Ins. Co. v. Phillips Publishing, Inc.,* 793 F.Supp. 627, 645–46 (D.Md.1992).

The *Central Hudson* test used for evaluating regulations that affect commercial speech is not inconsistent with other First Amendment principals, but merely applies these principles to commercial speech. *Metromedia* is not inconsistent with the Court's holding in *Central Hudson,* but simply applies the principals underlying *Central Hudson* in the context of commercial billboards. 453 U.S. at 512–16, 101 S.Ct. at 2894–97. The same can be said of *Georgia Outdoor Advertising,* 833 F.2d at 43. It is simply the application of the *Metromedia* standards.

The County's assessment of commercial speech proceeds from the assumption that the power to regulate the greater, in this case ban all commercial off-site signs, automatically gives Defendant the authority to regulate the lesser, *i.e.,* to pick and choose among different categories of commercial speech. Such an assumption is mistaken. Whether a specific regulation of commercial speech is acceptable will depend upon whether that regulation meets the *Central Hudson* test. Even though the County's interest in controlling billboards is recognized as substantial, the exceptions the County allows for particular subject matter commercial speech categories may so undermine the county's purpose as to violate constitutional standards. *See e.g., Ad World, Inc. v. Township of Doylestown,* 672 F.2d 1136, 1140–42 (3rd Cir.1982); *Discovery Network, Inc.,* 946 F.2d at 464. To paraphrase the Court in *Metromedia,* content based exemptions to a general ban on billboards do not create the free speech infringement, rather the general prohibition on commercial billboards does. What the exceptions show is the strength of the County's interest in prohibiting billboards to promote traffic safety and aesthetics. *Metromedia,* 453 U.S. at 520, 101 S.Ct. at 2899. How the restrictions in the Ordinance are read will depend upon the balancing of the substantial government interest against the Ordinance's limitations on commercial speech. *See Central Hudson,* 447 U.S. at 564, 100 S.Ct. at 2350.

Because the Ordinance is being stricken on other grounds this argument need go no further. The Court raises these considerations on the assumption that the County will rewrite its Ordinance. However, it should be noted that even in the latest amended version of the Ordinance, this potential problem remains. *See* Part 12 as amended by CB–23–1992.

This analysis that frustrates the County's attempt to correct the impermissible preferences for commercial speech, also applies to the improper noncommercial speech preferences in the Ordinance. For example, § 27–602(a) contains nearly twenty preferences for certain categories of noncommercial speech. Each of these improper preferences could be read as either allowing or prohibiting other noncommercial speech to be inserted in place of the preference stated in the provision. The very language of § 27–590(c) as amended, which the County now offers to meet constitutional standards, may be rendered inapplicable depending upon which provisions the County decides to enforce. If the noncommercial exemption in § 27–602(a) is read in light of the Ordinance's billboard definition, then other noncommercial messages are not allowed. On the other hand, if these same exemptions are read along with only § 27–590(c) as amended, then noncommercial speech is allowed. The exact same analysis holds for the seventeen exemptions in §§ 27–622 et seq.

As such, grafting language onto the body of this sign law has effects not contemplated by its drafters. The same noncommercial signs the County allows, through § 27–590(c) as amended, it prohibits when the content based exemptions are read with the Ordinance's billboard definition. The Ordinance becomes impossible to interpret as there are no clear standards for how it will be applied, i.e., it is not known what signs will be allowed and what signs will be prohibited because of the signs content. If § 27–590(c) as amended is ignored, then the Ordinance is unconstitutional. If the Ordinance's billboard definition is disregarded, then any provisions in the Ordinance that refer to the definition will not make sense. The Ordinance's coherence can only be purchased, therefore, at the price of accepting provisions that are unconstitutional. The County is caught between the rocks of incoherence and the shoals of constitutional standards it cannot meet.

This Court informed the County of these problems. (Paper No. 20). The County responded that its amendment conforms with Fourth Circuit precedent. According to the County, the Fourth Circuit upheld a local law in which the locality adopted similar language to save an ordinance from favoring commercial over noncommercial speech. See Georgia Outdoor Advertising, 833 F.2d at 44 n. 1; Major Media of the Southeast v. City of Raleigh, 792 F.2d 1269, 1271 (4th Cir.1986). As such, the County argues that the sign law must, therefore, be constitutional. See Paper Nos. 5 & 17 citing Georgia Outdoor Advertising 833 F.2d at 44 n. 1; Major Media of the Southeast, 792 F.2d at 1271.

The County's argument elevates form over substance. The Court does not have before it the sign laws upheld by the Fourth Circuit in these other cases. Nor has the County presented the Court with these other ordinances, or with detailed descriptions of how Fourth Circuit reasoning applies to the Ordinance that is before this Court. The County's argument, therefore, rests on a Fourth Circuit conclusion that appears to be taken out of context. The amended § 27–590(c), when read in conjunction with all of the Ordinance's provisions, destroys the law's consistency and rationality. While § 27–590(c) as amended corrects problems identified in the Court's initial Order, it presents new difficulties that undermine the sign law's coherence.

 The Ordinance's incoherence raises another constitutional problem. The Ordinance is vague. A law is vague when "persons of common intelligence must necessarily guess at its meaning and differ as to its application." Generally, a court will not invalidate an ordinance for vagueness where a saving construction would allow it to be upheld. See Screws v. U.S., 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); see also Memorandum Opinion Section II D. In the instant case, this ordinance is by definition inconsistent. The County must choose between inconsistent provisions. It is not knowing how the County will choose, which provisions will be used and which discarded, that make this ordinance vague. Vagueness is the forte that neither this ordinance nor those who are governed by it can escape. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The Ordinance's vagueness does not arise out of the ambiguity of particular provi-

sions, but rather from the impossibility of ascertaining which of the inconsistent provisions will be enforced.

> "Those ... sensitive to the perils posed by ... indefinite language, avoid the risk ... only by restricting their conduct to that which is unquestionably safe. Free speech may not be so inhibited."

*Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964). As with an overbroad law,[8] a vague law "hangs over [people's] heads like a 'Sword of Damocles.' ..." for the value of a 'sword of Damocles' is that it hangs—not that it drops. *Arnett v. Kennedy,* 416 U.S. 134, 231, 94 S.Ct. 1633, 1682, 40 L.Ed.2d 15 (1974) (Marshall J., dissenting).

■ In order to invalidate a law on vagueness grounds, the infringement on protected speech must be substantial. *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (to be unconstitutional, a statute's deterrence of protected speech must be real and substantial). The vagueness of the law must exceed marginal applications of the law that may be within its domain. *See* e.g., *Boyce Motor Lines, Inc. v. U.S.,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). The Court's analysis ordinarily compares the statutory line defining unconstitutionally burdened speech judged in relation to the statute's plainly legitimate sweep. *Cf. Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (Court upheld law whose overbreadth infringement was insubstantial when compared to the law's legitimate applications).

In the instant case, the law's vagueness is both real and substantial. Part 12 governs the placement of signs and billboards throughout the County. While the law's sweep is broad so are the potential constitutional violations. All off-site signs carrying noncommercial messages are affected by the constitutional infirmities. If the billboard's definition is read along with the amended § 27–590(c), each of the unconstitutional content based exemptions becomes a possible avenue for vague application. For example, there are nearly twenty-two content based preferences in § 27–602(a), nearly seventeen exemptions in § 27–622 *et seq.,* and both § 27–593(a) and § 27–441 carry exemptions for all noncommercial on-site signs.

The vagueness resides in the inability to determine whether noncommercial speech allowed under the amended § 27–590(c) can be inserted instead of the content based preferences improperly authorized by the Ordinance. If the noncommercial copy cannot be inserted then the very language adopted by the County to save the Ordinance will have no effect.

Unfortunately, if the noncommercial copy authorized by § 27–590(c) as amended is allowed, then the Ordinance's billboard definition must be ignored. Since billboards refer to any sign carrying an off-site message, the County's major purpose for passing this law would be severely undermined if this provision were enforced. The County's efforts to control the spread of billboards would be hampered. As such, the County might use selective enforcement of its provisions, in some cases it could allow and others deny the placement of billboards. In this situation, it is not known which, or to what extent the County will choose coherence over the Constitution. It is not known when the County will use its billboard definition and restrict permissible speech or allow the noncommer-

---

**8.** The Ordinance as amended by CB–23–1992, is also overbroad since it "does not aim specifically at evils within the allowable area of [government] control, but ... sweeps within its ambit other activities that constitute an exercise" of protected expression. *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940) (statute prohibiting all picketing void as overbroad since it banned lawful as well as unlawful picketing). In this case, if the Ordinance's billboard definition is read without the benefit of § 27–590(c) as amended then it unconstitutionally restricts noncommercial signs. *See*

e.g., part 12 § 27–593(6) banning all off-site noncommercial signs when read with the sign law's billboard definition in Part 2 § 27–107(a)(213) as amended by CB–23–1992.

However, if the Ordinance is read this way then it is certainly unconstitutional since it would bear an uncanny resemblance to the stricken San Diego ordinance. *See Metromedia,* 453 U.S. at 513–14, 101 S.Ct. at 2895–96. As such, the Court need not dwell on discussing the Ordinance's overbreadth since the Supreme Court has clearly decided that such constitutional maladies cannot be tolerated.

**1348**

cial speech that allows the ordinance to meet constitutional standards but defeats the Ordinance's coherence. Therefore, this Ordinance is unconstitutionally vague.

### D. Severability

In an effort to salvage part of its beleaguered sign Ordinance, Defendant argues that the unconstitutional provisions should be pruned from the body of the law (Paper No. 5). The County relies primarily upon the Ordinance's severability clause, which states:

> Should any provision of the zoning Ordinance be decided by the Courts to be unconstitutional or invalid, that decision shall not affect the validity of the Ordinance other than the part decided to be unconstitutional or invalid.

*See* Part 1 § 27–106.

Defendant also cites state law for the proposition that there is a strong presumption that legislative enactments are to be severed, where possible, of improper provisions instead of invalidating laws in their entirety. *Porten Sullivan Corp. v. State*, 318 Md. 387, 568 A.2d 1111 (1990).

■ Beyond the authority cited by Defendant, other authority supports the County's position. A law will not be invalidated if a saving construction consistent with the law's purpose is possible. *See Metromedia*, 453 U.S. at 521 n. 26, 101 S.Ct. at 2899 n. 26 (Supreme Court remanded San Diego ordinance to state court for determination of whether a saving construction could pass constitution standards);[9] *Aptheker v. Secretary of State*, 378 U.S. 500, 515–17, 84 S.Ct. 1659, 1668–70, 12 L.Ed.2d 992 (1964) (Supreme Court attempts to limit construction of an overbroad statute to save it from being stricken). However, three conditions must be met before severance is possible. In this case, none of these three conditions is met and as such, severing is impossible.

■ First, before the offending Ordinance provisions may be severed, the remaining provisions must be consistent with the legis-

lative intent of the statute. *Porten Sullivan Group*, 318 Md. at 387, 568 A.2d 1111. Second, what remains after the law is severed of unconstitutional limbs, must be coherent and constitutional. *See, Aptheker v. Secretary of State*, 378 U.S. at 515–17, 84 S.Ct. at 1668–70 (construing an overbroad statute in order to find its core would inject vagueness into a statute's scope and application); *see also, National Advertising Co. v. Town of Niagara*, 942 F.2d 145, 148–49 (2nd Cir.1991) (circuit court relies on New York law for proposition that legislature could not have intended a provision to be severed if the balance of the law cannot function independently). Finally, the court must avoid substituting its judgment for that of the legislative body that enacted the law. *Id.* The power to make laws lies with the lawmaking body, not the court. *Marchetti v. U.S.*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). *National Advertising Co.*, 942 F.2d at 151.

■ First, Maryland law holds that "[t]here is a 'strong presumption' that a legislative body intends its enactments to be severed if possible." *Porten*, 318 Md. at 410, 568 A.2d 1111 (citations omitted). An entire act should not be stricken if it contains some unconstitutional provisions unless those provisions are so connected with the law's meaning or purpose that it cannot be presumed that the legislature would have passed the act without them. *Id.*

■ In the instant case, the Ordinance's severance clause indicates the County's intent that unconstitutional provisions are to be eliminated from the body of the law, rather than striking the law in its entirety. *See* Part 1 § 27–106. Moreover, the County's purpose for regulating signs and billboards is spelled out in the Ordinance. *See* Part 12 § 27–589. Unfortunately, the means employed to realize its objectives undermine the County's stated purposes for enacting this law.

According to the Ordinance, the sign restrictions were enacted to promote among

---

9. The *Metromedia* Court stated that determining the meaning and application of a severability clause is properly a matter of state law. The Court remanded *Metromedia* as it was on appeal

from the California state courts. *Id.* In this instance, the action was filed in federal court. Moreover, state law is clear.

other goals, aesthetics and traffic safety. *See* Part 12 § 27–589(a). The County intended sign and billboard usage to be compatible with land use. *Id.* While many Ordinance provisions appear to meet those stated ends by controlling sign location and size, as well as, reducing the number of signs and billboards, other provisions create blanket exceptions that will surely lead to unrestricted sign and billboard placement. For example, on-site commercial signs are exempted from the list of prohibited signs. *See* Part 12 § 27–593(a)(6) and Part 5 § 27–441(a)(3)(B). Further, twenty-two categories of signs are eliminated from the Ordinance's permit requirements. *See* Part 12 § 602(a)(1)–(22). Another seventeen categories of signs are exempt from certain design standards and permit requirements. *See* Part 12 §§ 27–622 to 27–637.

This list of "problem" sections peppered throughout the Ordinance is not meant to be exhaustive. It is intended to illustrate the difficulty of determining just what the County's legislative body meant when it enacted the Ordinance and listed the law's purpose. The Ordinance harbors numerous content based preferences in the form of exemptions for signs carrying commercial and noncommercial messages, signs for the "public benefit," as well as exemptions for particular private interests.

Gleaning any coherent meaning or purpose from the provisions is further undermined by the County's more recent enactments. On the one hand, CB–24–1991 was clearly intended to reduce the construction of new billboards. On the other hand, the County's later enactment, CB–23–1992, places into the Ordinance's body additional exemptions for a variety of signs. *See* Part 12 § 27–602(a)(15) & (16). These provisions were essentially nullified in the same amendment by the County's language that allows for the inclusion of any noncommercial message wherever a content based preference exists. As such, the County created a blanket exemption of

noncommercial signs and billboards, completely uncontrolled by any time, place, or manner regulations. When viewed in its entirety, the County's purpose for this law becomes a mystery that magnifies the difficulty of the Court's task of determining whether severing the unconstitutional provisions is, even if possible, consistent with a legislative intent shrouded by apparently inconsistent provisions.

As to the second requirement for severance, that what remains in the statute be constitutional and coherent, common sense as much as legal precedent dictates this conclusion. It would hardly make sense to sever unconstitutional provisions if what remains cannot function as a law, or is itself unconstitutional.

In this case, the County has asked the Court to sever CB–24–1991. The County contends that this amendment banning new construction of all off-site signs/billboards was enacted as a separate price of legislation and may be eliminated leaving the same statute that functioned before CB–24–1991's enactment.

Unfortunately, severing CB–24–1991 will not eliminate the unconstitutional infirmities. If CB–24–1991 is severed without also striking CB–23–1992, then the law still has inconsistent provisions that both allow and prohibit noncommercial speech in place of the Ordinance's impermissible content based preferences. *See supra* Section II C. In other words, the law would still be vague. Neither Plaintiff nor anyone else would know whether the construction of new billboards containing noncommercial messages is allowed.

If the Court were to sever both CB–24–1991 and CB–23–1992, then unconstitutional content based preferences would still remain. For example, the twenty-two impermissible content based exemptions to the Ordinance's permit requirement would still remain. *See* Part 12 § 27–602(a).[10] As such, this attempt

---

**10.** Defendant attempts to get around this argument by suggesting that Plaintiff would not have standing to challenge these constitutional violations if both of the County's latest amendments were served "[CB–24–1991] is the only pertinent provision which is related to Plaintiff's claim that his permits were denied unconstitutionally." *See*

Defendants' Motion for Summary Judgment Paper No. 5.

This is a cute argument, but hardly persuasive. Plaintiff's standing is predicated on *Taxpayers for Vincent,* 466 U.S. at 799–803, 104 S.Ct. at 2125–28; *Metromedia,* 453 U.S. at 490, 101 S.Ct. at

by the County to prune unconstitutional limbs must be rejected.

Next, the Court must examine whether a more precise and narrow interpretation could be given to the amended § 27–590(c) so as to would make it consistent with the Ordinance's billboard definition. *See Screws v. U.S.*, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033–34, 89 L.Ed. 1495 (1945) (interpretation of vague legislation which supports its constitutionality is preferred over striking the law). Under the Ordinance's definition, any sign that contains a message unrelated to the sign's location is a billboard. *See* Part 12 § 27–107(a)(1). If the amended § 27–590(c) were altered to authorize only noncommercial speech related to the premises, then these sections would be consistent. Only noncommercial copy that related to the premises, or on-site signs, would be allowed in place of the impermissible content based commercial and noncommercial preferences. As such, provisions that prohibit billboards would not apply so as to exclude the noncommercial speech that is inserted instead of the impermissible content based preferences. This interpretation would, in effect, ban all billboards. It would be consistent with the ban on all new billboard construction that the County attempted to enact with CB–24–1991.[11] For example, the exemption from the permit requirement contained in the Ordinance for on-site commercial signs would also allow any on-site noncommercial message. Indeed, the County may have been arguing for this inter-

pretation of § 27–590(c) in its Motion to Reconsider and Set Aside Order.

Unfortunately, this narrower construction also falls prey to constitutional prohibitions. At the outset, although this narrower interpretation of § 27–590(c) as amended has the virtue of being in harmony with the Ordinance's billboard definition, it is not content neutral. As such, this interpretation of the Ordinance cannot stand. *See Metromedia*, 453 U.S. at 513–16, 101 S.Ct. at 2895–97; *see also Regan v. Time, Inc.*, 468 U.S. 641, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (portion of statute stricken as it was a content based restriction).

The County defines billboards by the content of the message the sign carries. A billboard is any sign with an off-site message. Under this narrowed interpretation of § 27–590(c) as amended, only on-site noncommercial speech could be inserted into the content based provisions exempting certain signs. Noncommercial speech not related to the premises on which the sign was located would still be prohibited. Therefore, the Ordinance would promote on-site noncommercial messages over off-site noncommercial speech. Apart from the difficulties in determining whether a noncommercial message is related to the premises, the provision is not content neutral because it promotes on-site speech. *See Metromedia*, 453 U.S. at 518–19, 101 S.Ct. at 2898–99. (plurality opinion).

2883–84; *see also Baker v. Carr*, 369 U.S. 186, 204–208, 82 S.Ct. 691, 703–705, 7 L.Ed.2d 663 (1962). Moreover, the Ordinance's overbreadth, impermissibly sweeps within its ambit constitutionally protected noncommercial speech. This separate constitutional infirmity may give Plaintiff standing to challenge this Ordinance even if Defendant could demonstrate that Revere was not directly affected by the Ordinance. *See Taxpayers for Vincent*, 466 U.S. at 789, 104 S.Ct. at 2120; *NAACP v. Button*, 371 U.S. 415, 432–33, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963).

11. The County may argue that its total billboard ban is permissible under Fourth Circuit precedent which appears to hold that a locality may ban all billboards. *Georgia Outdoor Advertising*, 833 F.2d at 45; *Major Media of Southeast*, 792 F.2d at 1272. These cases, however, rest upon their interpretation of *Metromedia*, which left open question, whether or not a locality may constitutionally ban all billboards. *See Metrome-*

*dia*, 453 U.S. at 515 n. 20, 101 S.Ct. at 2896 n. 20 ("Because a total prohibition of outdoor advertising is not before us, we do not indicate whether such a ban would be consistent with the First Amendment.") The Supreme Court did direct attention to *School v. Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) for an analysis of the constitutional problems created by a total prohibition of a particular expressive form. *Id.* Moreover, in this case, banning all billboards has other implications that might not have been present in the billboard Ordinances put before the Fourth Circuit in *Georgia Outdoor Advertising* and *Major Media of Southeast*. The County's billboard definition is defined in relation to its content, *i.e.*, all off-site speech. Whether all billboards could be banned may be an open question, but here the County may not ban all billboards because the Ordinance's definition of billboards necessarily relates to the sign's message and therefore is not content neutral.

Although this interpretation would not favor a particular viewpoint, remaining neutral as to particular sides of an issue is not sufficient for meeting constitutional requirements. *Id.*

The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.

*Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York,* 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319; *see also Metromedia, Inc.,* 538 F.Supp. at 1187.

For example, the sign exemptions for temporary religious signs might also allow a house number or building name to be inserted in the same place, as it is an on-site message. However, signs carrying other noncommercial messages such as "Save the Whales," would be prohibited unless the sign was located at an aquarium, where this message would transform an off-site sign or billboard into a permitted on-site sign. Even under this restricted reading, the Ordinance still carries impermissible content based preferences. *See Metromedia,* 453 U.S. at 513–16, 101 S.Ct. at 2895–97.

This lack of neutrality is also manifested in the continued preference for commercial speech over any off-site noncommercial speech. For example, the Ordinance exempts on-site commercial signs from its lists of prohibited signs. Under this reading of § 27–590(c) as amended, on-site noncommercial signs would be allowed as well. However, other noncommercial topics not connected with the premises are not allowed. Therefore, commercial on-site copy would still be given preference over certain categories of noncommercial speech in violation of Constitutional standards. *Id.*

Finally, this restrictive reading of § 27–590(c) as amended would violate recent Fourth Circuit precedent. *See Arlington County Republican Committee v. Arlington County,* 983 F.2d 587 (4th Cir.1993) (Fourth Circuit held that County Ordinance preventing residential property owners from displaying more than two temporary signs on their property is not narrowly tailored to further interests in promoting aesthetics and traffic safety). In this case, as in *Arlington County Republican Committee,* noncommercial speech on private property is being unduly restricted. *Id.* at 591–93. While the County's ordinance does allow temporary political campaign signs (*see* § 27–602(a)(16)), the Ordinance makes no special exemption for other highly valued speech and as such cannot be accepted. *Id.* at 591–93. Therefore, severing the unconstitutional provisions is not possible. Employing the alternatives that would make the Ordinance coherent, are still unconstitutional.

The final requirement before severance may be permitted is that the legislative body responsible for enacting the law, and not the courts, must write the law. *National Advertising Co.,* 942 F.2d at 151. Here, the only solution available to make this law coherent and constitutional appears to require a substantial redrafting of the Ordinance. Some provisions would need to be deleted while others, such as the definition of a billboard, rewritten. Even if the County's purpose for this law were clear, such an overhaul is for the County to do. It is not properly within this federal Court's jurisdiction to do what amounts to legislative work. *Marchetti,* 390 U.S. at 39, 88 S.Ct. at 697; *National Advertising Co.,* 942 F.2d at 151.

### III. *Conclusion*

This Court, therefore, denies Defendants' Motion to Reconsider and Set Aside Order. The Court grants Plaintiff's Renewed Motion for Summary Judgment. The Ordinance as amended by CB–23–1992 is unconstitutional, and moreover, severing unconstitutional provisions is not possible. The Court, therefore, permanently enjoins the County from enforcing Part 12 of the Prince George's County Zoning Ordinance governing the use of signs, § 27–589 through § 27–637.

A separate Order shall issue.